is Carlos Figueroa-Gibson v. Warden, 24-10658. I'm going to struggle with your last name. So, Mr. Aservatham? Close? Okay. You may proceed to the podium, and I see that you've reserved some time for rebuttal. Correct. May it please the Court. Cases, treatises, and common sense all say that judge-made administrative exhaustion requirements require petitioners to pursue only those remedies that the agency has the power to provide. And in Bose, this Court held that Section 2241 petitioners quote, need not exhaust administrative remedies where the administrative remedy will not provide relief commensurate with the claim. Let's assume I don't agree that Bose is a holding. It certainly says what you've said it says. Why should we adopt that as a holding in this case? Several reasons. So first is just first principles of what an administrative exhaustion requirement is. So the default rule for an administrative exhaustion requirement is it doesn't apply, that it only requires you to exhaust those remedies that the agency can, you know, give you. The second is just there's nationwide consensus on the issue. All the seven circuits outside of this one to have considered the issue have said you don't need to engage in futile efforts to exhaust. But they've been all over the place. I've read as many of these as I can possibly get my hands on. They've been all over the place about what is futility. And if you could, I'd prefer not to use the term futility, because it sure seems to me that what really exists is an extraordinary reasons exception. And within that, futility is one, but there are three or four that are sort of commonly done. The reason I say that is because I'm not sure if you, like, peel back what futility actually is. It does cover this situation. And so, but I do think there is probably exceptions that existed at common law about administrative exhaustion. And I guess I just, how are we, if we're going to give direction on what that is, if we're going to tell the district court to remand and apply this, to say, here is what is exhaustion, and here is what is within the exceptions, and here is what's not. How would we do that? How would we define that? Yeah, so I agree there's like some slippage in the case of what's futility, what's an exception, what's part of the exhaustion requirement itself. But I think this case is easy because the core part of an administrative exhaustion requirement, whether or not you're talking about things like, oh, were the deadlines too quick or too long, and all these other things you're going to see in those cases. Here, so you can look at Justice Scalia's opinion for the court in Rider, where he says, the core of what an administrative exhaustion requirement is, is that you have to be asking, you can only be made to ask the agency for something the agency can give you. And throughout the court's cases, what they say, one thing that the agency can't give you is holding a statute unconstitutional. So, but those are two different things. In theory, an agency can award gain time where there is a legitimate gain time claim. And so this is not a situation, it seems to me, where you're asking for the moon and the stars, and an agency can't give you moon and stars. That's an impossibility. But they're asking for gain time, and the agency can clearly give gain time. There's just a statute that prohibits it that would deny it. That happens all the time. People file things that are clearly precluded all the time, and that isn't there. The separate issue is constitutionality, and that's where you're at. Some circuits clearly have held, or at least danced around, that there's sort of a constitutionality exception there. But if you peel back older Supreme Court case law and sort of the nature of what administrative exhaustion and the extraordinary exceptions are, the court has not been all that consistent in some earlier cases about whether constitutionality itself is a basis to find what we'll call futility or extraordinary reasons to accept as an exception for exhaustion. Do you agree with me in my characterization? I agree with you that not every constitutional claim is a reason you don't have to exhaust. But I think that the way to draw the line is the way Chief Judge Sutton did in Jones Brothers, which is you have to exhaust a constitutional claim saying a statute or regulation is unconstitutional if the agency has discretion to read the statute in your favor or remedy the statute or the alleged constitutional violation. But this case is different because there's no—everybody agrees the bar is clear, right? There's a clear bar saying Figueroa cannot get time credits. Well, everyone—I mean, I understand everyone says so. You say so. They say so. Your client says so. But we don't know that until that actually gets happened. We don't know that until we came to court. But it's possible that the agency could have read it and said, you know what, this particular statute seems carved out from the sex abuse subsection of the prohibition under the First Step Act, and this particular statute for reasons that have to do with what the conduct of this particular person did doesn't fall within it, or it could take a conduct approach. We just don't know. And especially as an as-applied challenge, which this seems to be, how could we say that in every circumstance an agency can read this claim, treat it in some way as not being exhausted? So I think that this case, it's easy to say that because the government agrees we can't read the statute differently. Just reading the statute, you have to read like 10 words, and you see that there's no discretion. But you see the problem, and that is that we only know that because we got here without him going through that first step. The question for us is do you have to go through that first step? Yes, now we have the government's position. But we didn't beforehand, and it may have been that there was some consultation on it. In other words, it's not 100% obvious looking anti, looking back. It is now obvious having had the benefit of all of this litigation. So I disagree. I think even without the government taking it, because the government could have made 18 arguments about how you could read the statute differently, they would all be wrong because the statute is 100% clear on its face that if you have committed this crime, you are not eligible to get time credits that can let you out of prison early. And so I just don't think that this is an issue because if it were the case that there was a plausible way, the agency could have read the statute. Write a rule for me. Because Learned Counsel, who is one of the smartest lawyers in our country, says that he's looked at this, and it is impossible for any agency to interpret it that way. Does there have to be a 1% chance that you could win? Like, what's the rule that I'm going to write that says, hey, agency, some constitutional claims you can do, but some are precluded because the issue is stupid and you're wrong? How do I articulate that? So I think two things. So first, the language that a lot of courts of appeals use is they're not asking for something literally impossible for you to get relief. They use phrases like a reasonable prospect. So that was like Gonzales in the Seventh Circuit used the phrase reasonable prospect. I don't think you need to go there, though. I think you can say in a case where we are right that there is no ability to read these regulations. I've seen Pattenley used. Pattenley is one way. Reasonable prospect is another way. But I don't think you need to decide between those things because it's one situation where you come to federal court and it turns out maybe you're wrong. Maybe there's a way the agency could have read the statute differently. But in a case where you are right, you come to federal court and you are right that the agency could not have read the statute differently, there's just no basis to say you should have gone to the agency first. That is not a workable rule. You have to litigate to see whether you're wrong or right to see whether you're going to get there. That defeats the whole purpose. Counsel, let me ask this. Do you agree that this issue is not jurisdictional? Yes. Do you agree that we could skip over this issue and get to the merits in this case? So I... I know you didn't brief it. We'll get there. Do you agree that we can? I think it would be pretty unusual, but I think you literally have the ability to. You'd have to decide standing first. Right. And the district court didn't weigh in on the merits. We haven't briefed the merits here. I think it would be very unusual for you to decide the merits of the challenge. But we can do it. I think you literally can, yes. I want to offer you the opportunity now to talk about why your client, why they should not be dismissed for failure to sustain a claim. So, again, if we had briefed the case, we would have... You're going to get that opportunity, but I'm asking you to address it here. Okay. So I think, first, the equal protection claim. Figaro's argument is that the FCA's, the First Step Act's classification is irrational. So the government's brief, so I think we should still hold them to the arguments they made here. The government only makes one argument about why the classification here was rational. That's that these crimes are serious and it makes sense to treat people who are convicted of serious crimes differently from others. I don't think it makes sense to preclude attempted sex traffickers from getting gain time as opposed to non-attempted sex traffickers. But that's not what the statute does. So the statute says even if you are... That's the provision that we are dealing with. It may do other things, but the subsection that's at issue here is the prohibition on gain time for those that are convicted of attempted sex trafficking. So my question to you is, is it conceivable that Congress would want to give less gain time for attempted sex traffickers than for those that are not attempted sex traffickers? So I just want to get to the specific classification about sex traffickers. It's not just sex traffickers versus others. It's some sex traffickers who have been convicted of the exact same crime some years in the past are able to get time. But that gets to, the problem is that gets to under-inclusiveness and that gets the fit. And yes, this may not be able to pass intermediate or strict scrutiny. But certainly Congress, going forward, can decide, even if past sex traffickers didn't get the benefit, going forward, we now have wisdom that these folks shouldn't get an extra benefit that we are now giving to others. Right. That's rational, is it not? But the rationale that the government has put forward is that these are particularly serious... I'm asking you. Is there a conceivable basis that Congress would want to do that? So again, all I can say is that the rationale that what you're saying, which is that this is a serious crime, we should treat them differently, can't hold up when you don't treat even the people who have committed the same crime the same way. Well, certainly Congress can make decisions going forward that it didn't make going backwards. In other words, it says we've now created a new benefit that didn't exist before, and we are now telling you who's going to qualify for that. And some segment of folks, even though it's under-inclusive, is going to do that because their crime is so heinous that we're not going to do that. That's rational, is it not? So I don't, again, I don't want to concede anything because we haven't briefed it. I haven't looked into it fully.  So I don't want to just agree with you and say that. All right, let's do process. Let me ask you one question on equal protection. In listening to this back and forth, you do agree that we're applying rational basis, right? So I think, again, I haven't fully looked at it, but I think it's rational basis, but I do think there's also an animus part of equal protection as well. So if the classification here, which, again, just having read the briefing in this case below, it seems like what happened is the first part of the First Steps Act said we want to apply this to all prisoners. And then at the last minute, Tom Cotton comes in and says, I don't like these set of prisoners. So there may be another route on equal protection, which is animus to this group of people. Doesn't animus only apply if we're going to apply heightened scrutiny to those that are part of some sort of suspect class? I don't think so, and hopefully I'm not wrong. I think haven't we essentially said that in a number of different contexts? So, again, like I said, I haven't exhaustively looked into this merits issue, but I think the Supreme Court, it was a case, I think, about a homosexual classification without saying that that's a suspect class. They said Colorado has treated them with animus, and that was good enough. But you're not suggesting that sex offenders are a suspect class? No. In fact, our precedent says directly otherwise. Agreed, they're not a suspect class. And we've said, and the Supreme Court has also said that there can be animus in classifications regarding age, correct? And that that does not trigger any sort of heightened scrutiny, correct? I'm not sure which case. All right. If I can, with the indulgence of our presiding judge, I want to give you an opportunity on the due process claim. So whether it's procedural or substantive, and I think that your client has allotted that line throughout his pleadings below, what is the liberty interest that's at stake? Because as I understand it, if there's a prohibition up front and you're never entitled to it, whether that's right or wrong, but you're not entitled to it, there's no liberty interest in that thing, as long as it's not sort of a traditional property interest or anything like that. In other words, if the state never granted them a right to begin with, how does he have a liberty interest, whether procedurally or substantively, to that? So I think that's just a question of how you read the statute. So, again, the beginning of the statute says all prisoners are going to be entitled to these things, and then there's a carve-out. And the question is — It seems to be very inconsistent with the argument you made earlier, that this is so obvious that we do not pass go, do not collect $200, go straight to Federal court and not exhaustion. If it's so obvious, then he never had an interest in it under the statute. How possibly could he claim process in something he never had an interest in, that is such an obvious thing that he's precluded that he doesn't even have to exhaust? So I agree that it's obvious that the statute bars him. The question is not about is it a question of statutory interpretation in that sense. What I'm saying is that when you're thinking about for the purpose of does he have a liberty interest, do we think of the liberty interest at the outset of the statutes giving everybody something and then taking it away? And once you take something away, is the process by which that's taken away something that's rational? That's one question. The point I made about the statutory bar being clear is it's clear as day that there is a bar, and he is not able to get these credits. But you would agree that the statute provides only a discretionary benefit to all prisoners minus certain ones? In other words, just the men. So it's discretionary in one sense, but the statute says if you collect these credits, the BOP shall apply them to your sentence. That's the primary command. So it's discretionary, I guess, whether you are someone who's low risk to recidivate. They can choose to say that you're not. It's discretionary, I guess, to say whether you're allowed into a program or not for some disciplinary reason. But ultimately, if you complete the programs, get the credits, it's not discretionary whether they apply to you to help you get out of prison early. Thank you. Thank you. Mr. Label? Good morning, and may it please the Court. Michael Label for the Appley Warden. This Court should affirm the district court's dismissal of Mr. Gibson's habeas corpus petition. There are three independent bases supporting dismissal, two of which would be without prejudice. That would be standing and failure to exhaust, and one of them would be a dismissal on the merits. I plan to discuss in order exhaustion, then standing, and then briefly the merits if time permits. Why don't you start with standing because that's jurisdictional? Sure. So he's alleged, as I understand it, let me fast forward us. He's alleged two theories of standing, as I can tell. One is an equal protection theory. In other words, there's a public benefit that I'm alleged to have been entitled to. Some are getting it. Some are not. I'm not. That's unconstitutional. The other is there's gain time. I'm entitled to that gain time. You're not giving to me like you're supposed to give it to me, and now I'm serving more jail time than I otherwise would. Sure. A, do you agree that both of those are injuries in fact? No. Which one's not? Neither one would be applicable here, Your Honor. Well, I didn't say that. I asked a broader question. Are those injuries in fact under Article III? In some circumstances, yes, Your Honor. Okay. Are those injuries traceable in this case to the Bureau of Prisons? No. Why not? Well, first of all, as opposed to the equal treatment claim that counsel relies on the city of Jacksonville case, he's misconstruing or misapplying the case given the facts in which that principle was derived. There, there was competition among claimants. There was a finite resource. Counsel, we'll get into Jacksonville and whatever distinguishing characteristics you think it has, but my question to you was, would the injuries that you agree, at least in some circumstances, are Article III injuries, are they traceable in this case to actions of the Bureau of Prisons, to the director of the Bureau of Prisons? In other words, is the denial of the credits not traceable to a decision that would have to be made by the Bureau of Prisons here? No, Your Honor, because the redressability, excuse me, focuses on a likelihood. I'm asking about redressability. I'm asking about traceability. Traceability. Yes, Your Honor, then yes. I'm sorry. Traceability, yes. All right. So could we redress it by holding that the statute here is unconstitutional as applied to Mr. Figueroa? No, Your Honor, because of the redressability concern. Tell me what those are with regard. Start first with equal protection and then get to the amount of gain time theory. Yes, Your Honor. With respect to the equal protection, nothing that the court holds in this case would affect whether he actually accrues any benefit, any earned time credits or is able to get out early, Your Honor. So your point is he's not necessarily entitled to it at all in any event, even if we struck it down. Is that your point? Yes, Your Honor. Okay. So as I understand it, and correct me if I'm wrong on this, as I understand standing at the motion to dismiss stage, we take the allegations, and normally it's a complaint here. It's a petition. We take the allegations on their face, and we assume a meritorious claim. So, in other words, we don't get to the merits yet. We just assume you're meritorious and then ask the standing question. Here, as I read the petition, the petition alleges, and I believe it's at page 5 of the petition, that he has in fact taken the classes, that those classes were in fact told to him by staff at Bureau of Prisons, and that he is entitled because he has taken these classes and done these jobs to the gain time without this statute. Am I misreading the petition in any way? Yes, Your Honor. Tell me why. He acknowledges that he has not taken all of the classes or he has not. Sure, but he only has to take one. He doesn't have to take all of them. Under the regulations, he needs to take classes or he needs to accomplish all of the designated need areas as determined by the BOP, Your Honor. And he acknowledges, at least in his response to the motion to dismiss, which is document number 9, page 2, that he has not satisfied all of the need areas. So your view is that he has to do, the statute requires him to do everything before he qualifies? He needs to, he doesn't have to do everything. He needs to make an effort to do everything or be on the waiting list for the actual classes in the designated need areas. Right, and so he alleged, this is page 5 of his petition, quote, in addition to this, Figueroa has participated in a plethora of EBRR and productive activities which have been determined by his unit team as necessary, totally more than a year's worth of qualified programming, which but for the ineligible status would earn Figueroa more than half a year's worth of time credits, with the Bureau's discretion never entering into the picture. And then later on, he attaches a document which shows that he's on the waiting list for other classes that would be sort of categorized that way. Why is that not sufficient for, again, we're just at the pleading stage, redressability doesn't require direct causation, it just requires some sort of link to show that you are, have reasonably, there's a reasonable probability that we can redress, I think is the way the test is phrased. Why is that not sufficient? Because we don't always accept the plaintiff's allegations as true. We can look at the documents that he submitted and when jurisdiction is challenged, as explained in one of this court's recent cases, the Kingdom of Saudi Arabia case from last month, we also look at, when a defendant challenges jurisdiction, then we can look at other sources. So there are times where 12b-1 allows us to do a factual challenge? That's correct. Where there's a full factual development, this is not that. In other words, the district court didn't treat this as a factual challenge. Other times we treat it as a facial challenge. We accept everything is true in there. Now, you're also right that we look to the attachments to the petition, but here I don't see anything in the attachments that is inconsistent with what he said there. It adds some color and flavor to it. It may not be as fulsome as what he alleged here, but I don't see anything inconsistent with that. And so treating this as a facial challenge, not a factual one, how is what I read in page 5 of the petition not sufficient? If it were treated as a facial challenge, it would be a very close question. And, of course, the district court just totally skipped over the jurisdictional challenge that was set forth in the defendant's motion. It did. Not the best work. I agree. It should have addressed this stuff. But we'll end with this is a close question if that's it. And how would you address the Supreme Court's recent decision in Gutierrez that says that a prisoner's injury is redressable if a favorable judgment would remove the allegedly unconstitutional barrier the challenged law erected? Because you're suggesting, okay, he's got to take all these classes. But under Gutierrez, I'm not sure that's correct. Is that the 2025? Yes. The facts of that case were completely different, Your Honor, in that there had been a prior case that established that if the court were to rule in the defendant's favor, then the assistant district attorney would have been required to take the action that had been challenged. It was a direct causal relationship, Your Honor. That's not what we have here in respect to the city of Jacksonville. Is that what you're talking about, the equal protection injury? Well, under either theory, I think Judge Branch is asking. Because the claim here, he really wants to be let out of prison early, Your Honor. And nothing, again, early release, nothing that happens in this case will affect that. All right. Okay. I want to ask you about exhaustion, which is the second part that we talked about. So let's assume that I agree that BAS is our law or is what we should adopt or some version of it. So in other words, I disagree with the district court here, or at least as adopted by the magistrate judges R&R. Why is this not a claim that the BOP could not possibly give adequate relief to? If the claim is this statute, as applied to me, is unconstitutional, and I want you to strike it down as to me, declare it unconstitutional, BOP has no authority to declare a statute unconstitutional, right? Correct. How is that not like classic exhaustion or an exception to exhaustion, whether you call it futility or extraordinary reason or whatever? How is that not sort of classic, you don't have to do something that couldn't possibly get relief? Because, excuse me, Your Honor. We can move on to something else if that's okay. No, no, no. I would like to talk about the exhaustion. I'm sorry, Your Honor. No, that's fine. Tell me what you want to talk about. Exhaustion, Your Honor. We share many of the same concerns that the court has, and that is that he alleged both an as-applied claim and a facial claim. The Supreme Court in 2024 emphasized that we should always prefer adjudication on as-applied merits and not on a facial basis, which we have to determine whether the law is unconstitutional in all of its applications, Your Honor. But he's still asking, and that's certainly true, but the Supreme Court has also discussed in this line of cases that there isn't all that much of a difference between as-applied and facial. It's just as to remedy and how you review it. But let's assume this is just as-applied. He's still asking for a declaration that this be found unconstitutional as to him, and BOP, I think you've acknowledged correctly, doesn't have the authority to do that at all. No agency has the authority to declare its own statute unconstitutional. And so if that's the case, then why isn't this classic, again, extraordinary reasons, futility, whatever you want to call it, assuming that concept exists? Because it exists, as Your Honor indicated. Futility itself is not a criterion. It exists in connection with other factors, such as imminent harm. That would be the Milner case that was out of the Northern District of Georgia that happened in the COVID context, Your Honor. And here we don't have any of that. The administrative process, the aims of it would be served by requiring exhaustion even as-applied claims. Did the district court decide any issue about whether this was a case or a controversy that was alleged? No, Your Honor. Skip right over the- Is there any requirement that the court should have done that before reaching this exhaustion issue? Oh, absolutely, Your Honor. And the court remanded a case that's almost exactly the same, the Christopher Cobb case, in early January of 2025, for development of the record on the standing issue, Your Honor, and for resolution of that. And here, both sides- Was that the Judge Choflat case? Excuse me? Was that the case Judge Choflat was involved with? No, Your Honor. This is an unpublished, pure curiam case, Your Honor, if I recall correctly. Do you want to talk about the merits for the last remaining time that you have? Sure, Your Honor. I think that we are focusing a lot on a case in which the merits are clear beyond any conceivable doubt. He was convicted. He pled guilty after enactment of the 2018 good time credit statute. He was sentenced to the mandatory minimum. Then, subsequently, he challenges on equal protection and due process grounds the prohibition under 3621 that precludes earning good time credits for those who are serving a sentence for sex trafficking. Your opposing counsel says that, at the very least, there are some allegations which suggest an animus against those who are convicted of this sort of crime. He points to some legislative history that supports that, or he says supports that, and that that could review some sort of at least heightened, reasonable, rational basis review or some greater review. That's incorrect, Your Honor. There is no suspect classification. There is no impingement on a fundamental right. This Court established that in the Cook v. Wiley case from 2000. In United States v. Green of earlier this year, this is the ACCA case where one of the convicted defendants challenged the constitutionality of ACCA on equal protection and due process grounds. This Court stated that where there's neither a burden on a fundamental right nor targeting a suspect class, we will uphold the legislative classification so long as it bears a rational relation to some legitimate ends, and in doing that, we must assume that if a state of facts could exist which would justify such legislation, it actually did exist when Congress passed it, and that's exactly what we have here, Your Honor. What about the liberty interest question? Your opposing counsel says that the way the statute is read, it's sort of giveth and then taketh away, and the giveth part means that he did have at least some initial entitlement to it, and the taketh away is what needs to have some sort of process. I'm paraphrasing. He said it much better than I just did, but that's the argument he's making. Why is that not a fair reading of the statute? Because the statute places no substantive limitation on any official discretion in granting early release from a valid sentence. The Supreme Court has said that defendants do not have a constitutional right to be released from a valid constitutional sentence, and here the statute specifically gives the BOP or preserves the BOP's discretion, and so that the loss of the mere opportunity to be considered for discretionary early release is too speculative to constitute the deprivation of a constitutionally protected right, Your Honor. I see that my time is up. There are no more questions. Thank you. Thank you. Mr. O'Sorbotham, you have three minutes. Great. I want to take a shot at convincing you to resolve the exhaustion issue. First, very quickly, I want to answer Judge Schlesinger's question about whether the district court had to address standing first. It did not. Under Sinochem, you can decide which threshold non-merits issue. But Sinochem never mentioned exhaustion, did it? Sinochem didn't mention exhaustion. It had never been extended to exhaustion? Yes. So the First Circuit, in a case called Brito v. Garland in 2021, applied it to an exhaustion requirement. Not us or the Supreme Court, right? Not this court, but I think a panel with the two of you last year extended it beyond the facts of Sinochem to an abstention question. We did. But, you know, that's fine. So I want to just try to convince you to resolve the exhaustion issue. So the first reason is that the exhaustion issue is very frequently recurring, right? So there's a footnote in our brief that this magistrate judge has issued, you know, dozens of them within a year. And second is I think the district courts in this circuit are getting the issue out of sync with seven other circuits. The district courts in this circuit are frequently saying there is no exhaustion requirement. They're applying the PLRA's exhaustion requirement. They're saying it's jurisdictional. There's a ton of confusion on an issue that is getting applied on a daily basis by the district courts in this circuit. And I think this is a good opportunity to clear the issue up. Third is that I think the reason why the district courts are getting the issue wrong so frequently is because the issue comes up without counsel briefing. And in this case, unlike Cobb and unlike other cases, you've appointed counsel. The issue has been briefed thoroughly. And this gives you the best shot to answer the question correctly and clearly so that district courts can get the issue correct going forward. I mean, the district courts are not even citing Bose. They don't find it because the government doesn't bring it up and the petitioners don't have Westlaw. So I think this is a good case to resolve the issue. The fourth is the concerns that Judge Locke raised about workability I don't think are a reason to not address the issue here. So first is that seven circuits apply some form of the rule, and the sky has not fallen there. So I don't think you need to worry that, you know, not resolving all the nuances of the rule is going to create big problems here. The second thing is that administrative exhaustion requirements are applied in a ton of other contexts outside of Section 2241 petitioners. The sky has not fallen in all of those contexts either. And third is that we don't need to worry about those concerns here because the government here concedes it cannot provide the relief you seek. So all you need to say is that when relief is unavailable, you don't have to exhaust. And this issue doesn't, this case doesn't ask you to address any of the tougher questions. And the final point I want to make about that is that this concern about it being difficult to craft the outer edges of the doctrine is a particularly bad reason to not fix any confusion in this context because the entire exhaustion requirement was made up by the judges of this court, right? So this is a court-made, judge-made administrative exhaustion requirement. And so if it's true that that's causing confusion or it's difficult to fully define, I do think it's the court's responsibility to, you know, roll up your sleeves and do your best to define it. Counsel, we've talked about the merits of this case. It was, the merits were brought up in the red brief. You did not respond to the merits argument in the gray brief. You suggested that we remand, but we gave you an opportunity to discuss the merits today. And we're also going to give you an opportunity to do any supplemental briefing that you should so choose. I would typically say 10 days. I am mindful we are in December. I'll give you 30. We'll give you 30 days just to account to get you out of the holiday season. And any response that you would want to file, I'll give you 14 days after that for that. 20 pages or less, please. Thank you for both. Thank you. Thank you. And thank you both. And thank you, Mr. Osservatham. I understand that you are court-appointed. Thank you for your service. But thank you both for your argument today. We have your case under advisement. Thank you. Our third case is Mill Road, 36 Henry, LLC. MR36, Manager, LLC, et al. versus Commissioner of Internal Revenue 24-11334. This has been our week of conservation easement cases. So you're getting a panel who is well-prepared to address the issues with you today.